ROBERT G. DOWD, JR., Judge,
concurring
I concur in the opinion of the court. I write separately to express my concern that Section 408.500, which was designed for unsecured loans of five hundred dollars or less, has through the allowance of practically unlimited interest rates charged on these loans allowed the companies that provide these loans to use the court system to collect amounts from debtors far beyond anything that could - be deemed consistent with the statute’s, original purpose.
This case provides a clear example of predatory lending. The following basic facts exemplify the situation of the class action members in this case:
Class member, D.W., took out a $100 loan from CSI. A judgment was entered against him’ for $705.18; the garnishment is still pending. So far, $3174.81 has been collected, and a balance of $4105.77 remains.
Class member, S.S., took out an $80 loan from CSI. A judgment was entered against her for $2137.68; the garnishment is still pending. So far, $5346.41 has been collected, and a balance of $19,643.48 remains.,
Class member, C.R., took out a $155 loan from CSI. A judgment was entered against her. for $1686.93; the garnishment is still pending. , So far, $9566.15 has been collected, and a balance of $2162.07 remains.
Class member, C.N., took opt a $155 loan from CSI. A judgment was entered against him for $1627.44. There is now a lien on C.N.’s property.-
Class member, S.L., took out a $360 loan from CSI. A- judgment was entered ■against her for $1305.17; the garnishment is still pending. So far, $6021.80 has been collected, and a balance of $2182.90 remains. .
Class- member, F.H., took out a $100 loan from CSI. A judgment was entered against her for $380.82; the garnish-' ment is still pending. So far, $3935.54 has been collected, and a balance of $707.98 remains;
Class member, B.D., took out a $200 loan from CSI. A judgment was entered against her for $853.05; the garnishment is still pending. So far, $4692.31 has been collected, and a balance of $1531.57 remains.
Such drastic imbalances in what is borrowed, what is paid back, and what is still owed demonstrate the inherent injustice in these lending arrangements. As shown above, a $100 loan can quickly become a judgment worth thousands of dollars, which will be beyond the ability of many debtors to ever j>ay off.
Prior to adoption of Section 408.500, Missouri lenders making unsecured small loans under $500 could:only charge borrowers either a maximum interest rate of 26.6% per: annum on the unpaid principal balance or a one-time flat fee of $10 in lieu of interest. Barry Service Agency Co. v. Manning, 891 S.W.2d 882, 891 (Mo.App.W.D.1995). Before Section 408.500 was enacted in 1990, there were only about ten companies in Missouri making unsecured loans, all of whom offered only very small loans and charged the flat $10 fee. Id. In enacting Section 408.500, the General Assembly clearly desired to make unsecured loans under $500 more available to-those Missouri citizens needing them. Id. 'On the other hand, it also desired to afford some regulatory protection to borrowers and to discourage so-called “loan sharking” activities. Id. Thus, while Section 408.500 *28 was intended to allow greater latitude and flexibility in the rates lenders charge borrowers for unsecured loans under $500, the General Assembly did not completely abandon- the traditional stance of regulating those rates. Id. Had it intended for lenders to be able to charge any interest rate they chose, Section 408.500 would have been unnecessary, except to require that lenders register and pay a licensing fee. Barry Service Agency, Inc., 891 S.W.2d at 891. The General Assembly did not choose that option, but instead steered a middle course between total deregulation and absolute rate uniformity. Id. Initially, Section 408.500 included a provision that provided:
... lenders shall not charge, contract for or receive on such loans interest or any fee of any type or kind whatsoever which exceed the approved rate as provided in this subsection. Lenders shall file a rate schedule with the director who, upon review, shall approve rates comparable with those lawfully charged-in the marketplace for similar loans. In determining marketplace interest rates, the director shall consider the appropriateness of rate requests made by lenders and rates allowed on similar loans in the states contiguous to Missouri. If the director takes no action upon a filed rate schedule within thirty days of receipt, then it shall be deemed approved-as filed. The director, on January first and July first of each year, shall consider the filing of new interest rate schedules to reflect changes in the marketplace. The director may promulgate rules regarding the computation and payment of interest, contract statements, payment receipts and advertising for loans made under the provisions of this section.
Then, in 2001, Section 408.500 was amended and all of the above language was removed so that now the only limit on interest rates is found in Section 408.100, which provides, in pertinent part, “... any person, firm, or corporation may charge, contract for and receive interest on the unpaid principal balance at rates agreed to by the parties.”
Of course, lenders are entitled to recover interest on these loans. However, the only current limit on the amount of this interest is that the parties must agree to a rate. As a practical matter, this means there is no limit on the interest rate that can be charged. The debtor in these types of situations has absolutely zero power to negotiate a reasonable interest rate; instead, such debtors will pay whatever amount the lender decides to charge.
As a result, I believe Section 408.500 has through amendment and through the unregulated nature of the marketplace been gutted of its original intended purpose, which was to make these small loans more available to consumers to help them through a temporary financial difficulty. Currently, a person, who seeks relief in the form of a loan under Section 408.500, assumes a small debt that, in a relatively short period of time, can become an insurmountable debt. I recognize the debtors bear responsibility for defaulting on these loans, failing to appear to answer the petitions of the lenders, and for failing to timely file motions to set aside default judgments taken against them. However, as can be seen at the beginning of this concurrence, the amount the lenders are collecting or are attempting to collect on these types of loans shocks the conscience.
Erica Hollins is the main representative of the class whose case was examined the closest by the majority and the trial court. As noted by Hollins in her brief, she took out a $100 loan from CSI on December 21, 2006. Then she defaulted in early 2007 when she owed $69 in principal. CSI began charging interest on the loan immediately after Hollins defaulted. However, CSI did not pursue legal action until it *29 filed its petition in June of 2009, over two years later. At the time Hollins filed her brief, she had paid $3,592.35 on a $100 loan.
CSI’s petition for breach of contract against Hollins states, in pertinent part “there is now due thereon the principal sum of $124.00, plus interest thereon at the rate of 199.71% per annum from May 21, 2007, the date of default, which up to the time of this petition amount to $688.25, plus attorney’s fees of $18.60 and late fees of $40.00.”
Subsequently, the trial court entered its default judgment awarding CSI $124.00 in principal, $40.00 in late fees, $18.60 in attorney’s fees, and $729.90 in interest, for a total judgment of $912.50. After the judgment was entered, CSI began garnishing Hollins’ wages. I believe the trial court’s judgment violates the statutory limitation on prejudgment interest. Section 408.553 provides: “Upon default the lender shall be entitled to recover no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment together with interest thereafter at the simple interest equivalent of the rate provided in the contract” (emphasis added). This statute indicates interest on these types of loans does not begin to accrue until the date of a “final judgment” and then only at the “simple interest equivalent of the rate provided in' the contract.” Therefore, the trial court’s judgment, which includes $729.90 in interest from the date the debtor defaulted until the date of the default judgment is in violation of the statute.
Had Hollins or any similarly situated class member filed a timely motion to set aside the default judgment taken against them on these grounds, such motion could have been successful under Rule 74.05(d).[1] However, that did not happen.
Instead, these judgments are now being attacked in a class action for lacking subject matter jurisdiction. I agree with Judge Odenwald’s majority opinion that the judgments are not void for lack of personal or subject matter jurisdiction. Further, based on the facts of this case, the judgments are not void for being entered in- a manner inconsistent with due process- of law.
Thus, at this stage of the case, there is no remedy for this injustice. The legislature ought to examine Section 408.500 and related statutes and return them to their original purpose of allowing small loans at manageable interest rates to aid our fellow citizens in managing the obligations of their daily,lives.,,

. Even if such a motion had been successful, the debtors still may have ended up owing insurmountable amounts of post-judgment interest because, as noted above, the legislature has effectively not put any other limits on the amounts of interest allowed to be collected on these types of loans.